**Raquel RUBIO, on behalf of herself and all other similarly situated, Plaintiff,**

v.

**CAPITAL ONE BANK (USA), N.A., Defendant.**

**No. CV 07–6766 ABC (CWx).**

United States District Court, C.D. California.

Aug. 11, 2008.

Behram V. Parekh, Kirtland and Packard, El Segundo, CA, for Plaintiff.

Nancy R. Thomas, Skye H. Donald, Morrison and Foerster LLP, Los Angeles, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

AUDREY B. COLLINS, District Judge.

Pending before the Court is Defendant Capital One's Motion to Dismiss Second Amended Complaint and to Strike, filed on May 19, 2008. Plaintiff Raquel Rubio filed an Opposition on June 9, 2008, and Defendant filed a Reply on June 23, 2008. Oral argument was heard on August 11, 2008. Upon considering the materials submitted by the parties, the arguments of counsel, and the case file, the Court hereby **GRANTS** Defendant's Motion to Dismiss.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This class action lawsuit arises out of Plaintiff Raquel Rubio's ("Plaintiff") contention that Defendant Capital One Credit Services, Inc.'s ("Defendant") wrongfully raised the annual percentage rate ("APR") on the credit card it issued to her. On March 13, 2008, the Court issued an Order ("March 13 Order") dismissing with prejudice Plaintiff's breach of contract claim. Thereafter, Plaintiff filed a Second Amended Complaint ("SAC") refashioning her claim one for violations of the Truth in Lending Act ("TILA") 15 U.S.C. § 1601 *et seq.*, and for violations of California's Unfair Competition Law, California Business & Professions Code § 17200 *et seq.*

Specifically, in February 2004 Plaintiff received a mail solicitation (SAC Ex. A) from Defendant offering a "low 6.99% fixed [Annual Percentage Rate ("APR")] on balance transfers and purchases,-" the solicitation emphasized "this is not an introductory rate." (SAC ¶ 11.) In the so-called "Schumer Box" portion of the disclosures, Defendant characterized the APR as "[a] fixed rate of 6.99% (0.01915% daily periodic rate)." (SAC Ex. A.) That APR entry in the Schumer Box is marked with an asterisk directing the reader to the correspondingly-asterisked paragraph just below the Schumer Box identifying three conditions that may cause the APR to increase: "All your [APRs] are subject to change if any of the following conditions ('Conditions') occur: (i) you fail to make a payment to us when due; (ii) your account is overlimit; (iii) or your payment is returned for any reason." (SAC ¶ 12; SAC Ex. A.) Just below the asterisked text, there is a section entitled "TERMS OF OFFER," which includes the following term: "I will receive the Capital One Customer Agreement and am bound by by its terms and future revisions thereof. My Agreement terms (for example, rates and fees) are subject to change." (SAC Ex. A, p. 20.)

In response to the solicitation, Plaintiff applied for and was issued a Capital One credit card, which she used until August 2007. (SAC ¶¶ 14–16.) However, on August 3, 2007, Plaintiff received notification from Defendant that, "In light of rising interest rates over the past few years and the rate currently applied to your account balance, the APRs on your account are about to increase" to 15.9%. (SAC ¶¶ 18–19.) The notice provided that Plaintiff could avoid the rate increase by cancelling her credit card and paying off the balance under the original APR. (SAC ¶ 20.)

Plaintiff alleges that the solicitation violated TILA because it "disclosed a fixed APR that was not subject to change unless one of the specified conditions mentioned in the solicitation occurred," yet Defendant later notified Plaintiff that it was going to increase her APR even though none of the three specified conditions occurred. (SAC ¶¶ 17, 43–46.) Because Defendant was going to raise the APR for a reason not identified in the solicitation, Plaintiff alleges that the solicitation disclosures were misleading and inaccurate in violation of TILA. (SAC ¶ 48.) Stated differently, Plaintiff contends that she was "unaware that [Defendant's] promised fixed APR was in fact temporal in nature, according to [Defendant], and was subject to change even if the aforementioned conditions were not met." (SAC ¶ 27.) Plaintiff also asserts a tag-along claim for violation of California's Unfair Competition Law ("UCL").

Defendant now moves to dismiss the SAC, asserting that, as a matter of law, the solicitation—whose contents are undisputed—complied with TILA. As such, Plaintiff's TILA claim is not legally cognizable. Defendant also moves to dismiss the UCL claim. Plaintiff opposes, arguing that there is a disputed issue of fact as to whether the solicitation's disclosures were misleading and not "clear and conspicuous."

## II. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. *See* Fed.R.Civ.P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). "The Rule 8 standard contains 'a powerful presumption against rejecting pleadings for failure to state a claim.'"

*Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997). A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988). To survive a 12(b)(6) motion, a complaint "does not need detailed factual allegations," but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly,* — U.S. ——, 127 S.Ct. 1955, 1964–1965, 1968–1969, 167 L.Ed.2d 929 (2007) ("retir[ing]" the "no set of facts" language of *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

In resolving a motion to dismiss, the Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.,* 139 F.3d 696, 699 (9th Cir.1998). The complaint must be read in the light most favorable to plaintiff. *Id.* However, the Court need not accept as true any unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981).

In ruling on a 12(b)(6) motion, a court generally cannot consider material outside of the complaint (*e.g.,* facts presented in briefs, affidavits, or discovery materials). *Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.1994). A court may, however, consider exhibits submitted with the complaint. *Id.* at 453–54. Similarly, a court may consider documents that are not physically attached to the complaint but "whose contents are alleged in [the] complaint and whose authenticity no party questions." *Id.* at 454.

## III. ANALYSIS

### A. Plaintiff's TILA Claim

Plaintiff first claim for relief asserts that Defendant failed to make "clear and con-spicuous" APR disclosures in solicitation materials, as required by the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.,* and its implementing regulations 12 C.F.R. Pt. 226 ("Regulation Z") promulgated by the Federal Reserve Board ("Board") pursuant to statutory authority.

Specifically, Plaintiff argues that the use of the term "fixed," in the Schumer Box, to characterize the APR was misleading because it led her to believe that the APR "would undeniably remain at that rate throughout the entire time period she chose to utilize her CAPITAL ONE credit card, unless, one of the stated conditions above were to occur." (SAC ¶ 13.) As such, whether Plaintiff's claim is viable depends upon whether the term "fixed" may have the meaning that Plaintiff says she understood it to have. Relatedly, the Court must determine whether Defendant's inclusion of the three conditions below the Schumer Box was misleading such that Plaintiff could interpret them to be the only conditions that could cause an increase in the APR.

### 1. The Truth in Lending Act

Congress enacted the TILA in 1969. The stated purpose of the TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). In 1988, concerned that consumers were still not receiving accurate information about the potential costs of credit cards. Congress strengthened the TILA's protections for credit card consumers through enactment of the Fair Credit and Charge Card Disclosure Act, "a bill to provide for more detailed and uniform disclosure by credit and

charge card issuers, at the time of application or solicitation, of information relating to interest rates and other costs which may be incurred by consumers through the use of any credit or charge card." S.Rep. No. 100–259, at 1 (1988), reprinted in 1988 U.S.C.C.A.N. 3936, 3937.

■ Congress delegated the responsibility of "prescrib[ing] regulations to carry out the purposes of" the TILA to the Federal Reserve Board. 15 U.S.C. § 1604(a). In response to this mandate, the Board promulgated "Regulation Z," 12 C.F.R. § 226, and it also published a comprehensive "Official Staff Interpretation," 12 C.F.R. pt. 226 Supp. I, commonly referred to as the Official Staff Commentary (hereinafter, "O.S.C."). Both of these measures were published in accordance with "the broad powers that Congress delegated to the Board to fill gaps in the statute," *Ortiz v. Rental Management, Inc.*, 65 F.3d 335, 339 (3d Cir.1995). In light of Congress' explicit delegation of authority to the Board, courts must defer broadly to the Board's interpretation of the statute and its own regulations. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980) (noting that because TILA is a complicated act, such deference is necessary). *See generally Chevron, U.S.A., Inc. v. Natural Res. Def. Council, et al.*, 467 U.S. 837, 844–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

■ At issue in this case is TILA's requirement that a credit card provider disclose certain information in "direct mail applications and solicitations," including "annual percentage rates." 15 U.S.C. § 1637(c)(1)(A)(i). The Board's regulations also require "[a] credit card issuer" to disclose the applicable "annual percentage rate." 12 C.F.R. § 226.5a(b)(1) (requiring disclosure of "[e]ach periodic rate that may be used to compute the finance charge on an outstanding balance for pur-

chases ... expressed as an annual percentage rate."). TILA requires that information described in 15 U.S.C. § 1637(c)(1)(A), including "annual percentage rates," must be "clearly and conspicuously disclosed" in a "tabular format." 15 U.S.C. § 1632(a) and (c). Likewise, the Board's regulations mandate that disclosures required under 12 C.F.R. § 226.5a(b)(1) through (7) "be provided in a prominent location on or with an application or a solicitation, or other applicable document, and in the form of a table with headings, content, and format substantially similar to any of the applicable tables found in Appendix G." 12 C.F.R. § 226.5a(a)(2). The Board's regulations also dictate that a "creditor shall make the disclosures required by this subpart clearly and conspicuously in writing." 12 C.F.R. § 226.5(a)(1). Hence, both TILA and the Board-promulgated regulations require a credit card issuer to disclose the applicable annual percentage rate clearly and conspicuously in a table; this table is commonly referred to as the "Schumer Box" after the principal sponsor of the House bill. Congressman (now Senator) Charles Schumer. *Roberts v. Fleet Bank*, 342 F.3d 260, 263 fn. 1 (3d Cir.2003).

■ "To effectuate [TILA's] purpose, '[e]ven technical or minor violations of the TLA impose liability on the creditor.' Thus, the Ninth Circuit has held that the TILA and accompanying regulations must be 'absolutely complied with and strictly enforced.'" *Phleger v. Countrywide Home Loans, Inc.*, 2007 WL 4105672, 4 (N.D.Cal.2007) (*citing Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 704 (9th Cir.1986).) Furthermore, "[t]he accuracy demanded excludes not only literal falsities, but also misleading statements." *Rossman v. Fleet Bank (R.I.) Nat'l Ass'n*, 280 F.3d 384, 390–391 (3d Cir.2002) (internal citation omitted).

## 2. The *Roberts* Decision

Both parties devote considerable discussion to the Third Circuit's decision in *Roberts v. Fleet Bank*, 342 F.3d 260 (3d Cir. 2003). There, the Court reversed the district court's grant of summary judgment for the defendant on a TILA claim very similar to the TILA claim asserted herein. In relevant part, the Court found that, upon reviewing the contents of the Schumer Box alone, issues of fact existed as to whether the credit card issuer's solicitations were so misleading as to violate TILA and Regulation Z. The Court also held that solicitation materials other than those covered by TILA (such as disclosures made outside of the Schumer Box) may be considered in determining whether the credit card issuer has met TILA's "clear and conspicuous" disclosure requirements.

The solicitation in issue in *Roberts* offered a "7.99% Fixed APR," stated that the fixed APR was "NOT an introductory rate," and promised that "[i]t won't go up in just a few short months." *Roberts*, 342 F.3d at 263. The Schumer Box disclosed a "7.99% APR," and listed two specific circumstances under which the rate could change: if the cardholder failed to make required payments or upon closure of the account. *Id.* at 263. These two conditions were stated again below the Schumer Box. The solicitation also included a section entitled "TERMS OF PREQUALIFIED OFFER," which included the statement "my Agreement terms (including rates) are subject to change." *Roberts*, 342 F.3d at 263.

Although neither party pointed this out in their memoranda, the disclosures in *Roberts* differ from the disclosures in this case in two material ways. First, in *Roberts*, the two conditions that could trigger a rate increase were listed *inside* the Schumer Box together with the APR. In determining that these disclosures may

have been misleading, the Court specifically noted "[i]n the Schumer Box, [defendant] stated that the 7.99% APR could change in the event of nonpayment or closure of the account. [Defendant] listed no other conditions under which the 7.99% APR could change. We believe that it would be just as reasonable, if not more reasonable, for a consumer to conclude *from the information contained in the Schumer Box* that the 7.99% APR could be changed only under the two listed circumstances ..." *Roberts*, 342 F.3d at 266. It is clear from this language that the inclusion of the two conditions *within* the Schumer Box was one of the bases of the Court's determination that Plaintiff raised a triable issue of fact. Here, by contrast, the conditions that could cause the APR to increase were disclosed *outside* the Schumer Box (below it) not inside the Schumer Box. As discussed in further detail below, TILA and Regulation 2 strictly limit what material may be included within the Schumer Box. Accordingly, because the Schumer Box in this case differs from the Schumer Box in *Roberts* with respect to the very term that forms one basis of Plaintiff's TILA claim, that aspect of the *Roberts* decision is not on point with this case and is therefore not persuasive.

Second, in determining that the statements outside the Schumer Box could have been misleading, the *Roberts* Court stated, "we agree with *Roberts* that the claims in the introductory letter that the 'fixed 7.99% APR' is 'NOT an introductory offer' and 'won't go up in just a few short months' could cause a reasonable consumer to be confused about the temporal quality of the offer." *Roberts*, 342 F.3d at 268. Plaintiff herein similarly claims to have been misled as to the temporal quality of the APR Defendant offered. However, in contrast with the assertion in *Roberts* that the rate "won't go up in just a few short months," in this case Defendant's solicita-

tion is devoid of *any* temporal claims about the fixed rate. Based upon the above-quoted sentence, it is clear that the *Roberts* Court relied on the defendant's vague temporal claim about the rate to find that the plaintiff raised an issue of fact. Because Defendant herein made no such claim, the facts of this case do not fall within that holding of *Roberts.*

Accordingly, even though *Roberts* and this case involve the same legal claims, because the solicitation in *Roberts* differs from the solicitation herein in material ways, the cases are factually distinguishable. As such, assuming *Roberts* was correctly decided, the Court cannot do as Plaintiff urges it and simply apply *Roberts*'s holding to this case.

### 3. Defendant's Schumer Box Disclosures

■ The disclosure that Plaintiff claims is misleading is Defendant's characterization of the APR as "[a] fixed rate of 6.99%." This disclosure was made inside the Schumer Box.

As stated above, TILA and the regulations require that the APR be disclosed inside the Schumer Box. By indicating, in the Schumer Box, that the offer was for "[a] fixed rate of 6.99%," Defendant's disclosure of the APR ostensibly complied with this requirement. Other APR-related Schumer Box disclosures required by TILA (in 15 U.S.C. 1637(c)) and Regulation Z (at 12 C.F.R. 226.5a) concern disclosures of variable APRs and introductory rates. A "variable" rate is one "under which rate changes are part of the plan and are tied to an index or formula." O.S.C. § 226.6(a)(2), cmt. 2, at 411. *see also id.* § 226.6(a)(2), cmt. 2, at 411 (stating "the creditor's contract reservation to increase the rate without reference to such an index or formula (for example, a plan that simply provides that the creditor reserves the right to raise its rates) would not be considered a variable-rate plan for Truth in Lending disclosure purposes.") It is undisputed that the APR in issue here was not a "variable" rate: there is no allegation that it was tied to an index or formula. Similarly, it is undisputed that the APR herein was not an introductory rate, that is, one offered for a specific and limited period of time. Accordingly, none of the disclosures concerning variable or introductory rates is relevant here.

Plaintiff nevertheless claims that Defendant's use of the term "fixed" was misleading because she understood the term to mean that the APR was permanently fixed. Plaintiff further contends that the asterisked three conditions listed below the Schumer Box could reasonably be read to be the only conditions that could cause an increase in the APR. It is undisputed that the APR was raised 3 1/2 years after Plaintiff opened her account despite use of the term "fixed" even though none of the three listed events occurred.

Although the term "fixed" is not expressly defined in TILA or Regulation Z, the term is used in contrast with the term "variable." "Fixed" in the context of an APR means not tied to an underlying interest rate index. *See Roberts,* 342 F.3d at 268 fn. 3 (noting that a fixed rate is not necessarily permanent, and noting that a fixed rate APR is not tied to other interest rates); *see also* O.S.C. § 226.6(a)(2), cmt. 2 at 411 (stating that a variable rate plan is one "under which rate changes are part of the plan and are tied to an index or formula.") Thus, the term "fixed" as it applies to APRs connotes no time element; rather, the term means only that the rate is not tied to an index or formula. And, unlike in *Roberts,* Defendant herein made no assertion that its use of the term "fixed" had any temporal quality. As such, the Court rejects Plaintiff's contention that "the word 'fixed' could cause a reasonable

consumer to be confused about the temporal quality of the offer." . (Opp'n 10:4–6.) Defendant's use of the term "fixed" within the Schumer Box was therefore not misleading. Plaintiff has identified no other disclosure in the Schumer Box that it contends is misleading or not "clear and conspicuous."

### 4. Statements Outside the Schumer Box

Plaintiff also argues that statements outside the Schumer Box render the disclosure misleading. As an initial matter, Plaintiff takes inconsistent positions concerning whether statements outside the Schumer Box are relevant to its claims or may properly be considered in the Court's analysis. *See Opp'n* 7:20–8:4 (stating incoherently, within a single sentence, "*Irrespective* of what Capital one may have said *elsewhere* in the solicitation, ... the 'Schumer Box' ... expressly said that the APR was 'fixed,' in no uncertain terms, which was entirely inconsistent with statements made elsewhere in the solicitation." (original emphasis)); *also compare* Opp'n fn. 5 (arguing that "statements made *outside* the 'Schumer Box' should not play a role in the analysis of whether there was a TILA violation for disclosures *required inside* the Schumer Box") (original emphasis) *with* Opp'n 8:14–16 (stating, "Due to this inconsistent language in the solicitation materials, [ ] a reasonable consumer could find the materials confusing and misleading," thus demonstrating that Plaintiff bases her TILA claim on the allegation that statements presented *outside* the Schumer Box were misleading).

■ In any event, as discussed in *Roberts*, the Court may consider all of the information in a creditor's disclosures in determining whether the creditor has complied with the requirements of TILA to present its disclosures clearly and conspicuously. "When Congress decided to re-quire credit card issuers to disclose required terms in a clear and conspicuous manner, [it is not likely] that it intended for us to ignore other statements made by those issuers in their credit card solicitation materials." *Roberts*, 342 F.3d at 267. Furthermore, by requiring creditors to disclose certain information inside the Schumer Box, Congress's purpose was to help customers access and understand such information, not to shield credit card companies from liability for information placed outside the Schumer Box. Accordingly, while "TILA only applies the 'clear and conspicuous' standard to required disclosures, we conclude that the TILA permits us to consider materials outside of the Schumer Box in determining whether the credit issuer disclosed the required information clearly and conspicuously." *Roberts*, 342 F.3d at 268. *See also Handy v. Anchor Mortgage Corp.*, 464 F.3d 760, 764 (7th Cir.2006) (holding that where a lender provided a borrower with a correct disclosure but also provided the borrower with an incorrect form, the disclosure was unclear); *Ralls v. Bank of N.Y.*, 230 B.R. 508, 516 (Bankr.E.D.Pa.1999) (stating that where there was a contradiction between TILA disclosures and other information provided by the lender, the disclosures were unclear). Here, Plaintiff asserts that certain statements outside of the Schumer Box render the disclosure misleading for several reasons. None of these claims is legally sound.

■ First, Plaintiff contends that Defendant's listing, below the Schumer Box, of three specific events that could cause her rate to change was misleading because it "failed to specify 'rising interest rates' as a specific event that could lead to an interest rate increase." (Opp'n 13:17–21.) However, Defendant's listing of "specific events" complied with section 226.5a(b)(1) of Regulation Z, which requires the disclo-

sure of "a *penalty rate* that will apply upon the occurrence of one or more *specific events.*" 12 C.F.R. § 226.5a(b)(1) (emphasis added). The limited nature of this disclosure obligation is made clear by O.S.C. comment number 7 to section 226.5a(b)(1). This comment is entitled "Increased penalty rates" and requires that "[if] the initial rate may increase upon the occurrence of one or more *specific events, such as a late payment or an extension of credit that exceeds the credit limit,* the card issuer must disclose in the table the initial rate and the increased penalty rate that may apply." O.S.C. § 226.5a(b)(1), cmt. 7, at p. 395 (emphasis added). Based upon this comment, it is clear that the "specific events" that could trigger "penalty rates" are customer defaults, "such as a late payment." Rising interest rates—something that no particular customer has control over—are not customer "defaults" for which a "penalty rate" may be imposed upon a customer. Accordingly, neither TILA nor Regulation Z required Defendant to disclose in the solicitation that the APR may rise because of rising interest rates, because a rising interest rate is not a "specific event" that could trigger a "penalty rate." Furthermore, as discussed in the Court's March 13 Order dismissing Plaintiff's breach of contract claim, nothing in the disclosure suggests that the list of three specific events constitutes a complete list of reasons why the APR may be increased.[1] As such, Defendant's disclosure of the three "specific events" complied with TILA's express disclosure obligation and was not otherwise misleading.

In addition, Defendant's disclosure of the three specific events *below* the Schumer Box rather than within it complied with

the Regulation Z. Comment 7 instructs that "[f]or issuers using a tabular format, the specific event or events must be placed outside the table and an asterisk or other means shall be used to direct the consumer to the additional information." O.S.C. § 226.5a(b)(1), cmt. 7, at p. 395. This is precisely what Defendant did. (Indeed, as discussed above, Defendant's listing of the specific events outside the Schumer Box distinguishes this case from *Roberts,* where the specific events were stated within the box.) For the foregoing reasons. Defendant's disclosure of the three specific events complied with TILA both in substance and in form.

 Second, Plaintiff claims that two statements Defendant made outside of the Schumer Box conflict with its characterization (within the Schumer Box) of the rate as "fixed." Specifically, Plaintiff contends that the disclosure that three specific events could cause the APR to rise conflicted with her understanding that the rate was "fixed." Similarly, Plaintiff contends that Defendant's statement in the "TERMS OF OFFER" that "My agreement terms (for example, rates and fees) are subject to change" conflicted with the characterization of the rate as "fixed." *See, e.g.,* Opp'n 8:15 (stating "Due to this inconsistent language in the solicitation materials ('fixed' APR versus allegedly reserving the right to change the APR), a reasonable consumer could find the materials confusing and misleading.") However, as stated above, "fixed" in the context of interest rates simply means that the rate in not pinned to an index or formula, not that the rate is permanent over time. Furthermore, unlike in *Roberts,* Defendant's solicitation contains no reference to

---

**1.** The Court agrees with Plaintiff that the March 13 Order dismissing the contract claim is not determinative of whether Plaintiff has stated a TILA claim. However, to the extent the March 13 Order includes analysis that is relevant to the present Motion, the Court finds it appropriate to note that analysis.

the rate being "fixed" temporally. As such, there is no inconsistency between characterizing a rate as "fixed" and disclosing that it could rise due to specific events or subject to Defendant's express reservation to change the rates. In other words, an APR can be both "fixed" and subject to change.

Although Plaintiff does not expressly argue so, her claim *may* be read as asserting that disclosures concerning the possibility of the APR changing should have been disclosed inside the Schumer Box. However, Plaintiff has identified no section of TILA or Regulation Z that requires such a disclosure. However, an issuer cannot include in the Schumer Box any information not specifically required to be placed therein. *See* O.S.C. § 226.5a(a)(2), cmt. 4., at p. 393 (stating, "The table containing the disclosures required by § 226.5a should contain only the information required or permitted by this section. [ ] Other credit information may be presented on or with an application or solicitation, provided such information appears outside the required table.") Because neither the "specific events" nor the statement that the terms of the agreement may change are required to be inside the Schumer Box, they *cannot* be stated inside the Schumer Box without running afoul of TILA. Thus, to the extent Plaintiff may be attempting to assert such a claim, it fails.

 Furthermore, TILA plainly contemplates a creditor's making a blanket reservation to change the terms of the account at its discretion and for reasons not specifically set forth in he solicitation or customer agreement. *See e.g.*, O.S.C. § 226.9(c), cmt. 1, at 423 (stating that "notice must be given if the contract allows the creditor to increase the rate at its discretion but does not include specific terms for an increase (for example, when an increase may occur under the creditor's contract reservation right to increase the

periodic rate)"); *see also id.* § 226.6(a)(2), cmt. 2, at 411 (stating "the creditor's contract reservation to increase the rate without reference to such an index or formula (for example, a plan that simply provides that the creditor reserves the right to raise its rates) would not be considered a variable-rate plan for Truth in Lending disclosure purposes.") As such, Defendant's statement in the "TERMS OF OFFER" informing Plaintiff that the terms of the agreement, including rates, are subject to change is consistent with TILA. Accordingly, the statements Defendant placed outside the Schumer Box both comply with TILA and could not be misleading to a reasonable consumer.

Finally, having compared the objected-to elements of the solicitation with the relevant portions of TILA, Regulation Z, and the O.S.C., it is apparent that Defendant complied with the disclosure requirements stated therein: Plaintiff has identified no required disclosure that was omitted, nor were the disclosures Plaintiff received misleading. Plaintiff does not challenge the propriety of the Board's regulations, and it is not for the Court to substitute its "own interstitial lawmaking for that of the Federal Reserve." *Ford Motor Credit Co.*, 444 U.S. at 568, 100 S.Ct. 790. As the Supreme Court has stated, "[t]he concept of 'meaningful disclosure' that animates TILA, cannot be applied in the abstract. Meaningful disclosure does not mean more disclosure." *Id.* Thus, to permit this claim to proceed despite Defendant's compliance with TILA and Regulation Z would frustrate the purposes of the law.

Accordingly, Plaintiff has failed to state a claim for relief under TILA. As a matter of law, Defendant's use of the term "fixed" within the Schumer Box was consistent with TILA and was not misleading, either independently or when viewed in the context of the remainder of Defendant's solici-

tation. Nor do the objected-to elements of the solicitation outside the Schumer Box run afoul of TILA's mandate that the disclosures it requires be "clear and conspicuous" and not misleading. Plaintiff's TILA claim is therefore **DISMISSED.**

## B. Plaintiff's UCL Claim

■ Plaintiff's second claim for relief asserts that Defendant's conduct also violated all three prongs of California's Unfair Competition Law, Business and Professions Code section 17200 *et seq.*, because it was unlawful, unfair and deceptive. However, in light of the foregoing analysis, none of these claims can survive.

■ To state a claim for an "unlawful" business practice under the UCL, a plaintiff must assert the violation of any other law. *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) (stating, "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other law and treats them as unlawful practices that the unfair competition law makes independently actionable.") (citation omitted). Where a plaintiff cannot state a claim under the "borrowed" law, she cannot state a UCL claim either. *See, e.g., Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal. App.4th 700, 718, 113 Cal.Rptr.2d 399 (2001). Here, Plaintiff has predicated her "unlawful" business practices claim on her TILA claim. However, as discussed above, Plaintiff's attempt to state a claim under TILA has failed. Accordingly, Plaintiff has stated no "unlawful" UCL claim.

■ Relatedly, none of Plaintiff's UCL claims can survive because Defendant's practices fall within the UCL's "safe harbor." Defendant contends that all of the conduct about which Plaintiff complains complied with TILA and Regulation

Z. "A court may not allow plaintiff to 'plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition.'" *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir.2000). *See also Lazar v. Hertz Corp.*, 69 Cal.App.4th 1494, 1505, 82 Cal.Rptr.2d 368 (1999) (stating, "a business practice cannot be unfair if it is permitted by law.") "A bar against an action 'may not be circumvented by recasting the action as one under [the UCL].'" *Cel– Tech*, 20 Cal.4th at 182, 83 Cal.Rptr.2d 548, 973 P.2d 527. However, "[t]o forestall an action under the unfair competition law, another provision must actually 'bar' the action or clearly permit the conduct." *Smith*, 93 Cal.App.4th at 720, 113 Cal. Rptr.2d 399. "In other words, courts may not use the unfair competition law to condemn actions the Legislature permits. Conversely, the Legislature's mere failure to prohibit an activity does not prevent a court from finding it unfair. Plaintiffs may not 'plead around a 'safe harbor,' but the safety must be more than the absence of danger." *Id.* at 184, 83 Cal.Rptr.2d 548, 973 P.2d 527. In *Smith*, for example, the Court found that an insurer could not be held liable under the UCL for engaging in conduct mandated or permitted by the California Insurance Code. *See Smith*, 93 Cal.App.4th at 717–721, 113 Cal.Rptr.2d 399. The same conclusion obtains here because, as discussed above, "another provision" (TILA and Regulation Z) "clearly permit[ted]" Defendant's conduct. Indeed, Plaintiff's sole argument in opposition to this point is that the safe harbor is inapplicable because the conduct violates TILA. (*See* Opp'n 17:23–18:15.) Thus, the opposition concedes that if Plaintiff's TILA claim fails, then the UCL claim is barred by the safe harbor. For the foregoing reasons, Defendant is entitled to the benefit of the safe harbor and there is no room for any UCL claim based upon Defendant's con-

duct. Plaintiff's UCL claim is therefore **DISMISSED** in its entirety.

Having so ruled, the Court need not reach Defendant's alternative arguments. In light of the foregoing analysis, it is apparent that Plaintiff will not be able to salvage any of her claims by further amending her complaint. Accordingly, her claims will be dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED.** Plaintiff's First Claim for Violations of the Truth In Lending Act and Second Claim for Violations of California Business and Professions Code section 17200 *et seq.*, are **DISMISSED with prejudice** for failure to state a claim.

Because this Order disposes of all of Plaintiff's claims, Plaintiff's Second Amended Complaint is hereby **DISMISSED.** Defendant is **ORDERED** to lodge a proposed Order for Entry of Judgment within five (5) days of the issuance of this Order.

**SO ORDERED.**