801 F.2d 661
 Alexander P. SMITH, Trustee, Appellant,
v.
Kenneth Neil ANDERSON, Cynde Lou Anderson, Plaintiffs,
v.
U.S. CREDIT CORPORATION, Appellee,
Charles Wells, Rodney W. Wright and Zelthia E. Wright, Amici Curiae.
 No. 85-2391.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 4, 1986.
Decided Sept. 18, 1986.
 
 Carolyn L. Camardo (Robert V. Roussos, Smith & Tolerton, P.C., Norfolk, Va., on brief) for appellant.
 Alex T. Mayo, Jr. (Bruce H. Matson, McGuire, Woods & Battle, Norfolk, Va., on brief) for appellee.
 Ian C. DeWaal, Kathleen E. Keest, National Consumer Law Center, Boston, Mass., on brief, for amici curiae.
 Before RUSSELL, WIDENER, and WILKINSON, Circuit Judges.
 WILKINSON, Circuit Judge:
 
 
 1
 Alexander Smith, as trustee for the bankruptcy estate of Kenneth and Cynde Anderson, brought suit against U.S. Credit Corporation alleging violations of Virginia usury statutes and the Federal Truth-in-Lending Act in a loan to the Andersons. The district court, 626 F.Supp 102, finding no violations, entered summary judgment in favor of U.S. Credit on all counts of the trustee's complaint. We affirm.
 
 I.
 
 2
 Kenneth and Cynde Anderson entered into a loan agreement with U.S. Credit Corporation in October, 1983. The principal amount of the loan was $18,350. The note signed by the Andersons expressed their interest obligations in terms of two percentage figures. The note identified "initial interest," equal to 13.95% of the amount of the loan, or $2560, due upon disbursement of the proceeds of the loan. Periodic interest, paid over the term of the loan, was charged at a yearly rate of 14.75%. The note stated the Andersons' monthly payments of $253.69, and the term over which those payments would be due.
 
 
 3
 A federal truth-in-lending disclosure statement, also signed by the Andersons, accompanied the note. The statement identified a 19.42 Annual Percentage Rate (APR), defined as "the cost of my credit as a yearly rate." This rate resulted in a total finance charge of $32,043.96. The "amount financed", $15,447.90, was determined for purposes of the disclosure "by subtracting from the principal amount of your loan [$18,350.00] prepaid finance charges consisting of initial interest due on the date of disbursement and the premium due to the mortgage insurance company." The statement also disclosed the total of payments, $47,491.86, the schedule of monthly payments, and the disbursement of loan proceeds.
 
 
 4
 In August, 1984 the Andersons filed a petition in bankruptcy and Alexander Smith was appointed trustee for their estate. The trustee brought this action attacking the loan transaction. He contends that the transaction violated the disclosure requirements of both state and federal law, and that the "initial interest" charged by U.S. Credit was in reality a service charge in excess of that permitted by Virginia law, Va. Code Sec. 6.1-330.16(E). The district court found that the loan documents, including the truth-in-lending statement, properly disclosed to the Andersons the nature of their obligations. In addition, it held that the "initial interest" charge was in fact interest and not a service charge, and accordingly was within the bounds of Virginia law.
 
 II.
 
 5
 Considering first the issues of disclosure, we affirm the district court's conclusion that U.S. Credit complied with all applicable disclosure requirements. There is no real dispute on appeal that the lender met every disclosure requirement of 12 C.F.R. Sec. 226.18, the regulation promulgated pursuant to 15 U.S.C. Sec. 1604 to identify disclosures for this type of transaction. That regulation requires that the creditor disclose, inter alia, its identity, the amount financed, an itemization of the amount financed, the finance charge, the APR, and the total of payments. Examination of the truth-in-lending statement provided by U.S. Credit reveals that all of the required information was disclosed to the Andersons.
 
 
 6
 Though conceding that "[t]he Truth-in-Lending Disclosure and Itemization had all the information the Andersons needed to know as to the terms of their loan," the trustee contends that U.S. Credit nevertheless violated federal requirements by disclosing information in a confusing manner. Specifically, he alleges that the creditor created unnecessary confusion by stating different interest rates and principal amounts on the note and in the truth-in-lending statement. While the note identified the principal amount as $18,350 and stated interest rates of 13.95% and 14.75%, the attached disclosure stated an APR of 19.42% and an "amount financed" of $15,447.90. The trustee would find in these figures an inconsistency designed to confuse the borrowers in violation of federal law.
 
 
 7
 The perceived inconsistency arises, however, from the lender's compliance with the truth-in-lending requirements. "APR" and "amount financed" are terms of art, defined by federal regulations, and explained in the disclosure statement itself. "Amount financed" is derived by making certain adjustments to the principal loan amount, most notably the subtraction of any prepaid finance charge. See 12 C.F.R. Sec. 226.18(b). There is therefore no inconsistency in the fact that this "amount financed" differs from the principal amount of the loan, and the difference is clearly explained in the disclosure. "APR" likewise differs from the general definition of interest rate because it considers, by definition, a broader range of finance charges when determining the total cost of credit as a yearly rate. See 15 U.S.C. Secs. 1605-06. Rather than being a deliberate attempt to deceive, therefore, U.S. Credit's disclosures in the truth-in-lending statement served to supplement the information provided in the note in the uniform manner required by federal law, and to convey to the borrowers in understandable terms the true extent of their obligations.[1]
 
 
 8
 Nor did the disclosures by U.S. Credit violate state requirements. The trustee asserted that U.S. Credit failed to comply with Va.Code Sec. 6.1-330.17(A), which requires a lender to "quote the cost of ... consumer credit to a prospective debtor or borrower in terms of an annual percentage rate and not solely in terms of an add-on or discount installment rate to be charged to the prospective debtor or borrower, in any oral or written communication or advertisement and in oral response to an inquiry from a potential debtor or borrower concerning the cost of such credit." This statute, however, by its terms regulates communications between lenders and prospective borrowers prior to the loan transaction. Its purpose is to permit prospective borrowers to shop for the best comparative credit rates. There is no requirement under the statute that a lender such as U.S. Credit state APR on the face of a note.
 
 
 9
 In any event, U.S. Credit clearly did state the applicable APR to the Andersons on the attached federal form. As noted by the district court, the truth-in-lending statement was "an integral part of the transaction" and is recognized as such by state law. Virginia Code Sec. 6.1-330.16(E), allowing a lender to charge any interest rate stated on the note, provides that "[d]isclosure of charges, not otherwise specified in the note ..., in an interest disclosure pursuant to the federal disclosures law, shall constitute compliance with this statute." Thus, this section contemplates that appropriate federal disclosure satisfies the requirements of Virginia law. U.S. Credit's compliance with the truth-in-lending laws accordingly fulfills the disclosure obligation imposed by state law.
 
 III.
 
 10
 The trustee asserts, however, that the substantive elements of the transaction violated Virginia's usury statute. Specifically, he charges a violation of Va.Code Sec. 6.1-330.16(E), which exempts long-term loans secured by a subordinate mortgage from regulation of the interest rate charged, but limits the permissible service charges to two percent of the amount of the loan. The trustee argues that the "initial interest" payment, constituting 13.95% of the principal amount, was in reality a service charge, and therefore violated Sec. 6.1-330.16(E). We affirm the conclusion of the district court that this sum was not a service charge but was instead prepaid interest not regulated by the terms of Sec. 6.1-330.16(E).[2]
 
 
 11
 Though we recognize that courts considering alleged violations of usury laws must "look beyond the mere form of a transaction and analyze its substance," Valley Acceptance Corp. v. Glasby, 230 Va. 422, 337 S.E.2d 291, 295 (1985), we note that the disputed charge is characterized on the note as interest and acknowledged by the debtors to be "fully earned on the date of payment." Parties to a contract, of course, are ordinarily credited with using words in their commonly understood way. See Eppes v. Eppes, 169 Va. 778, 195 S.E. 694, 702 (1938). Thus, we begin with the presumption that in designating the 13.95% payment as initial interest, the parties recognized the charge as "compensation for the loan of use of money." Turner v. Turner, 80 Va. 379, 381 (1885).
 
 
 12
 The trustee asserts, however, that the designation of this payment as initial interest served merely to disguise its true nature as a service charge. To the extent it has spoken, however, the Virginia legislature has indicated that it too views payments such as this as interest rather than service charges. The "initial interest" paid to U.S. Credit is, as noted by the district court, analogous to "points" or prepaid interest. The general usury statute, to which Sec. 6.1-330.16(E) is an exception, limits to 8% per year the interest "including points" that may be charged on loans to which it applies. Va. Code Sec. 6.1-330.11. Defining points as money received "as consideration for making the loan," id., the statute contemplates that such payments are included in the definition of interest. Though the present dispute involves an exception to the general usury statute, nothing suggests that the inclusion of such charges in the definition of interest is altered where interest is unregulated. Thus, Sec. 6.1-330.16(E) may be read as permitting a loan within its coverage at any rate of interest, including points, stated in the note. Both the initial and periodic interest were stated on the face of the note and accordingly complied with Sec. 6.1-330.16(E).
 
 
 13
 This conclusion is further confirmed by the code's understanding of the term "service charge." The code indicates that a service charge is one for investigating and processing a loan rather than a charge for the use of money. See, e.g., Va.Code Sec. 6.1-330.23 ("To cover the cost of investigating and processing the loan, a lender ... may charge and collect in advance from the borrower a service charge....") The legislature made this understanding clear by replacing the term "investigation fees" with "service charge" when rewriting the relevant code sections. Compare Va.Code Sec. 6.1-330(a) (1958) and Va.Code Sec. 6.1-330(b) (1950) (see 1974 Va. Acts 440-41) with Va.Code Secs. 6.1-330.16, 24 (1983). U.S. Credit's itemization of the amount financed reveals, however, that no such costs were covered by the "initial interest" but were instead paid from the balance of the loan proceeds.[3] Accordingly, the "initial interest" does not have the characteristics of "service charges" contemplated by the Virginia Code.
 
 IV.
 
 14
 The loan here was a lawful one. The initial interest charge constituted interest rather than a service charge and accordingly was unrestricted by Virginia law so long as the cost of borrowing was properly disclosed.[4] Here, that disclosure took two forms. The face of the note clearly expressed the initial interest and periodic interest. These costs, moreover, were incorporated into the federal disclosure form, independently fulfilling state requirements. Though these disclosures presented different expressions of the cost of credit, they were entirely consistent, and adequately revealed to the borrowers their obligations. In sum, the loan transaction here complied with the careful requirements of state and federal law. To supplement those requirements with ones of our own devising would throw credit markets into confusion and destabilize this area of law.
 
 
 15
 The judgment of the district court is hereby
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 Plaintiffs reliance on Mason v. General Finance Corp., 542 F.2d 1226 (4th Cir.1976) is misplaced. Mason considered the requirements of the predecessor to 12 C.F.R. Sec. 226.28 where state law required disclosure that was inconsistent with federal law. Here, however, the trustee can point to no required state disclosure that is inconsistent with the federal disclosures made by U.S. Credit
 
 
 [2]
 The Virginia General Assembly recently repealed Sec. 6.1-330.16(E) and provided that the lender cannot charge more than 3% of the total loan as prepaid interest. Va.Code Sec. 6.1-330.16(F). Va.Code Sec. 6.1-330.16(E), however, applies here because the controlling law is that at the time of the loan transaction
 
 
 [3]
 The only charges deducted from the initial interest were a $25 tax service charge and a $1000 referral fee paid to Virginia Mortgage & Property. The trustee contends that this referral fee was improper. Virginia Code Sec. 6.1-330.24, however, specifically provides that such a fee may be paid from interest collected under Sec. 6.1-330.16. Because we find that U.S. Credit complied with Sec. 6.1-330.16, the referral fee was not improper
 
 
 [4]
 We have considered the opinion of the Attorney General of Virginia relied upon by the trustee to urge that points constitute a service charge. 1982 Op.Va.Att'y Gen. 23. The Attorney General was not primarily concerned in the opinion with what constituted a service charge, but rather considered the substantive restrictions on charges by industrial loan associations. The opinion never analyzed whether points or similar charges might constitute interest for the purposes of Sec. 6.1-330.16(E)