that it is consistent with the case law and Regulations.

## IV.

## CONCLUSION

The court finds that the ALJ's decision is supported by substantial evidence contained in the record as a whole, and that, therefore, the Commissioner's decision should be affirmed.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in his Complaint and in the Brief in Support of Complaint is **DENIED;** Docs. 1, 18.

**IT IS FURTHER ORDERED** that separate Judgement shall be entered in favor of Defendant and against Plaintiff in the instant cause of action and incorporating this Memorandum Opinion.

**Eneida AMPARAN, individually and on behalf of others similarly situated, Plaintiff,**

**v.**

**PLAZA HOME MORTGAGE, INC.; Washington Mutual Mortgage Securities Corp., Defendants.**

**Case No. C 07–4498 JF (RS).**

United States District Court, N.D. California, San Jose Division.

Dec. 17, 2008.

David M. Arbogast, Jeffrey K. Berns, Arbogast & Berns, LLP, Tarzana, CA, Jonathan Shub, Seeger, Weiss, LLP, Philadelphia, PA, Patrick Deblase, Paul R. Kiesel, Michael C. Eyerly, Kiesel, Boucher & Larson, LLP, Beverly Hills, CA, Rebecca Tingey, Lee A. Weiss, Rebecca Tingey, Dreier, LLP, New York, NY, for Plaintiff.

John Dominic Alessio, Procopio, Cory, Hargreaves & Savitch, LLP, San Diego, CA, Deborah E. Barack, Stroock & Stroock & Lavan, LLP, Los Angeles, CA, for Defendants.

## ORDER [1] GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND TO STRIKE

JEREMY FOGEL, District Judge.

Plaintiff Eneida Amparan bring this putative class action for violations of the federal Truth in Lending Act ("TILA"), as well as state-law claims for unfair business practices, breach of contract, and breach of the implied covenant of good faith and fair dealing. Plaintiff alleges that Defendant Plaza Home Mortgage ("Defendant") failed to disclose important information about her residential mortgage in the clear and conspicuous manner required by law.[2] Defendant moves to dismiss the complaint for failure to state a claim upon which relief may be granted, and to strike from the complaint requests for certain forms of relief. For the reasons set forth below, the motions will be granted in part and denied in part.

## I. BACKGROUND

In January 2006, Plaintiff obtained an Option Adjustable Rate Mortgage ("Option ARM") from Defendant. The terms of the mortgage are contained in the Adjustable Rate Note ("Note") executed by Plaintiff in connection with the loan. A central feature of the loan is its early interest rate adjustment. While the interest rate on the loan is pegged to a variable index and changes over time, the loan offered a low initial interest rate of 1.5%, which resulted in an initial minimum monthly payment of $1,628.97.[3] After one month, the interest rate increased substantially from the low initial rate of 1.5% to the substantially higher index-based rate, which was and continues to be calculated by adding a 3.4% "margin" to an indexed figure.

Despite the almost immediate rise in the applicable interest rate, Plaintiff's minimum monthly payment remained level because the Note permits only one annual increase to the minimum monthly payment. In addition, the Note imposes a "payment cap" on the amount of each such annual increase to the minimum monthly payment, limiting that increase to 7.5%. However, if the loan's unpaid principal balance reaches 115% of its original value, the payment cap no longer applies and the remaining principal is paid off in equal monthly payments over the remaining term of the loan. Because the initial monthly payment was based on a 1.5% interest rate and did not rise with the actual interest rate that was charged, Plaintiff's mortgage began to accrue interest each month in an amount greater than the amount of her monthly payment. The remaining interest was added to the balance of unpaid principal and itself began accumulating interest. Consequently, the

---

1. This disposition is not designated for publication in the official reports.

2. Plaintiff alleges that the subject loan was sold to Washington Mutual Mortgage Securities Corporation. On that basis, Plaintiff recently served Washington Mutual with her Second Amended Complaint. Washington Mutual has not yet answered the complaint.

3. This amount is equal to the monthly payment on a fully amortized thirty-year loan with a 1.5% interest rate.

principal balance has increased even as Plaintiff has made the minimum monthly payment. This situation is known as negative amortization, the result of which is an ultimate reduction in the borrower's equity.

In connection with the loan transaction, Plaintiff received a federally mandated Truth in Lending Disclosure Statement ("Statement") and a Loan Program Disclosure ("Disclosure") with information specific to the loan she was considering.[4] The Statement specifies that the annual percentage rate ("APR") on the mortgage is 7.136%. The Statement also includes a schedule of estimated payments ("Payment Schedule") based in part on the initial 1.5% interest rate and in part on the subsequent index-based rate. The Payment Schedule lists an initial minimum payment of $1,628.97 that increases by 7.5% on March 1 of each year. In the fifth year, the payment increases to $3,759.72, which apparently reflects the point at which the principal balance exceeds 115% of its original value as a result of negative amortization, thus overriding the payment cap. The Payment Schedule assumes that Plaintiff will make only the minimum monthly payment.

Plaintiff claims that the loan documents failed clearly and conspicuously to disclose the interest rate structure applicable to her loan and the consequent certainty that negative amortization would occur if she made only the minimum payments. On this basis, Plaintiff alleges multiple violations of TILA's implementing regulations, contained in Title 12 of the Code of Federal Regulations ("Regulation Z"). Specifically, she claims that Defendant violated 12 C.F.R. § 226.19 by failing adequately to disclose (1) the actual cost of her loan, as expressed as an annual percentage rate ("APR"), (2) that the initial interest rate on the loan was discounted, and (3) that negative amortization was certain to occur if Plaintiff followed the Payment Schedule. Plaintiff claims that Defendants violated 12 C.F.R. §§ 226.17 & 226.18 by failing adequately to disclose: (1) the APR upon which the Payment Schedule was based, (2) the effect of the payment cap, and (3) the composite APR.[5] Plaintiff also alleges that Defendant committed unlawful, unfair, and fraudulent business practices in

---

4. Plaintiff has attached the Statement to her complaint, and the Court properly may consider it on a motion to dismiss. See Fed. R.Civ.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); see also Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir.2007) ("When ruling on a motion to dismiss, we may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.") (internal quotation marks omitted). While Plaintiff did not attach the Disclosure, Defendant has attached a copy to its motion to dismiss. See Fontaine Decl., Ex. C. Plaintiff acknowledges at the bottom of the Statement that she received the variable rate disclosure, and the Disclosure is an integral part of the allegedly defective "loan documents." See SAC, Ex. 1, at 6. This document properly is considered as part of the complete set of documents involved in the loan transaction, the existence and contents of which are alleged in the complaint. See In re Stac Elcs. Sec. Litig., 89 F.3d 1399, 1405 n. 4 (9th Cir. 1996) (noting that complete copies of documents whose contents are alleged in the complaint may be considered in connection with a motion to dismiss pursuant to Rule 12(b)(6)). Defendant also has attached an amortization schedule that it claims to have provided to Plaintiff as part of the loan transaction. See Fontaine Decl., Ex. D. Plaintiff disputes whether she received this document, and accordingly the Court will not consider it in ruling on the instant motion.

5. Plaintiff also claims more generally that Defendant failed adequately to disclose the actual "terms of the legal obligation between the parties." As noted below, this claim is duplicative of other, more specific claims and will be dismissed. See infra note 7.

violation of § 17200 of the California Business and Professions Code, and committed fraud by failing adequately to make the foregoing disclosures. Finally, Plaintiff claims that Defendant, by failing to apply a low, "fixed" interest rate for the first three to five years of the loan term, and by failing to apply each payment to "principal and interest," breached both the express terms of the Note and the implied covenant of good faith and fair dealing contained in every contract under California law.

## II. LEGAL STANDARD FOR MOTIONS TO DISMISS AND TO STRIKE

■ A complaint may be dismissed for failure to state a claim upon which relief may be granted for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir. 1984). For purposes of a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754 (9th Cir.1994). A complaint should not be dismissed "unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Clegg,* 18 F.3d at 754. In addition, leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corrs.,* 66 F.3d 245, 248 (9th Cir.1995). Conversely, dismissal may be ordered with prejudice when amendment would be futile. *Dumas v. Kipp,* 90 F.3d 386, 393 (9th Cir.1996).

■ Pursuant to Rule 12(f), a court may "order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). While a motion to strike "should be denied unless it can be shown that [the challenged matter] could have no possible bearing on the issues in the litigation," *Buick v. World Savings Bank,* 565 F.Supp.2d 1152, 1159 (E.D.Cal.2008), such a motion may be used to strike requests for relief that is unavailable as a matter of law. *See Wilkerson v. Butler,* 229 F.R.D. 166, 172 (E.D.Cal.2005); *Bureerong v. Uvawas,* 922 F.Supp. 1450, 1479 n. 34 (C.D.Cal.1996).

## III. DISCUSSION

### A. TILA Claims

■ TILA is a consumer protection statute that seeks to "avoid the uninformed use of credit." 15 U.S.C. § 1601(a). The statute is designed "to protect consumers' choice through full disclosure and to guard against the divergent and at times fraudulent practices stemming from uninformed use of credit." *King v. California,* 784 F.2d 910, 915 (9th Cir.1986). *See also Semar v. Platte Valley Fed. Sav. & Loan Ass'n,* 791 F.2d 699, 705 (9th Cir.1986) ("Congress designed [TILA] to apply to all consumers, who are inherently at a disadvantage in loan and credit transactions."). Because the statute is remedial in nature, it is to be applied broadly in favor of the consumer. *Jackson v. Grant,* 890 F.2d 118, 120 (9th Cir.1989); *see also Plascencia v. Lending 1st Mortgage,* No. C 07–4485 CW, 2008 WL 1902698, *3 (N.D.Cal. Apr. 28, 2008) ("TILA has been liberally construed in the Ninth Circuit.") (internal quotations and citation omitted). Thus, even "[t]echnical or minor violations" of TILA or its implementing regulations may impose liability on the creditor. *Semar,* 791 F.2d at 704 (noting also that "[t]o insure that the consumer is protected ... [TILA and its implementing regulations must] be absolutely complied with and strictly enforced").

TILA focuses not only on the form of a disclosure but also on its accuracy. *See Rossman v. Fleet Bank (R.I.) Nat'l Ass'n,*

280 F.3d 384, 390–91 (3d Cir.2002) ("[T]he issuer must not only disclose the required terms, it must do so accurately."). "The accuracy demanded excludes not only literal falsities, but also misleading statements." *Id.* (citation omitted). In that respect, the adequacy of TILA disclosures is to be assessed "from the standpoint of an ordinary consumer, not the perspective of a Federal Reserve Board member, federal judge, or English professor." *Smith v. Cash Store Mgmt.,* 195 F.3d 325, 327–28 (7th Cir.1999) (citation omitted).

TILA is implemented by the Federal Reserve Board of Governors ("FRB") through regulations found in 12 C.F.R. § 226 and through the FRB's Official Staff Commentary ("Commentary"). The Commentary is binding on all lenders, and compliance with it shields an issuer from civil liability pursuant to TILA's safe-harbor provision. *See* 15 U.S.C. § 1640(f); *see also* 12 C.F.R. Pt. 226, Supp. I–1 ("Good faith compliance with this commentary affords protection from liability under 130(f) of the Truth in Lending Act").

### 1. Statute of limitations

■ Defendant argues that Plaintiff's TILA claims are barred by the applicable one-year statute of limitations, which begins to run when the transaction underlying the alleged violation is "consummated." *See King v. California,* 784 F.2d 910, 915 (9th Cir.1986); *see also* 15 U.S.C. § 1640(e). In the instant case, Plaintiff's TILA claims arose at the latest at the closing of her mortgage transaction on January 5, 2006. SAC ¶ 2, Ex. 1. Plaintiff did not file the instant action until August 30, 2007, more than one year from the date she and Defendant consummated the transaction. Thus, the one-year time limit of § 1640(e) has expired.

■ Nonetheless, the Ninth Circuit has held that TILA's remedial purpose authorizes equitable tolling of the limitations period in appropriate circumstances. *King,* 784 F.2d at 915. Such circumstances exist where "a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period." *Santa Maria v. Pac. Bell,* 202 F.3d 1170, 1178 (9th Cir.2000). In such a case, the limitations period may be extended "until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *King,* 784 F.2d at 915. "Generally, the applicability of equitable tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss . . . if equitable tolling is at issue." *Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 1003–04 (9th Cir.2006). A motion to dismiss on statute of limitations grounds should be granted "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Plascencia v. Lending 1st Mortgage,* 583 F.Supp.2d 1090, 1097 (N.D.Cal.2008) (quoting *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987)); *Ford v. Wells Fargo Home Mortg.,* No. 08–4276 SC, 2008 WL 5070687, at *4–5 (N.D.Cal. Dec. 1, 2008) (declining to grant motion to dismiss on statute of limitations grounds because "factual allegations in the Complaint, construed in a light most favorable to Plaintiffs, might give rise to tolling of the statute").

■ In the instant case, Plaintiff alleges that the loan documents did not clearly disclose that Defendant intended to increase the interest rate applicable to Plaintiff's loan after only thirty days. SAC ¶ 30. Plaintiff also alleges that the loan documents did not clearly disclose the certainty that negative amortization would occur if Plaintiff followed the Payment Schedule provided in the Statement. SAC

¶ 31. It is possible that a reasonable person in Plaintiff's position would not have detected the negative amortization allegedly built into the loan within the one-year limitations period. As a result, the allegations in the complaint are sufficient to raise questions about the reasonableness of Plaintiff's ignorance of her TILA claims until after the expiration of the limitations period, and make dismissal of her TILA claims inappropriate on a Rule 12(b)(6) motion. Accordingly, the Court turns to the merits of the TILA claims.

### 2. Violations of 12 C.F.R. § 226.19

Plaintiff claims that Defendant violated § 226.19 by failing clearly and conspicuously to disclose (1) the actual cost of the loan, expressed as an annual percentage rate, (2) that the initial interest rate offered on her loan was a discounted rate, and (3) that if she followed the Payment Schedule provided in the Statement, negative amortization was certain to occur. As an initial matter, Defendant argues that the requirements of § 226.19 apply exclusively to the Disclosure, and not to the Note, Statement, or any other document provided in connection with the loan transaction. *See* Def.'s Mot. to Dismiss, at 6:17–19 (arguing that "[s]ection 226.19 . . . is a specific regulation that governs the disclosures required in the ARM Loan Program Disclosure document," not those statements in the Note or Statement). Defendant's reading is supported by the regulations. Section 226.19(b), which is entitled "Certain variable-rate transactions," requires "the following disclosures . . . [:](1) The booklet titled Consumer Handbook on Adjustable Rate Mortgages . . . [,][and] (2) A *loan program disclosure* for each variable-rate program in which the consumer expresses an interest." 12 C.F.R. § 226.19(b). Each of the requirements that Defendant is alleged to have violated is listed solely among the proper contents of a "loan program disclosure." *See* 12 C.F.R. § 226.19(b)(2)(v), (vii).

■ However, the relevant provisions of TILA are closely interrelated. The Staff Commentary to Regulation Z makes clear that no disclosure may cause another disclosure to be obscured or made ambiguous. *See* 12 C.F.R. Pt. 226, Supp. I, ¶ 17(a)(1)–1. In addition, courts have held that TILA prevents conflicting or inconsistent disclosures, including where the inconsistency arises from statements in multiple documents. *See, e.g., Handy v. Anchor Mortgage Corp.,* 464 F.3d 760, 764 (7th Cir. 2006) (noting that where a lender provided a borrower with both a correct and an incorrect disclosure, the disclosure was unclear in violation of TILA); *Roberts v. Fleet Bank,* 342 F.3d 260, 267–68 (3d Cir. 2003) (holding that in determining whether a required disclosure is clear, a court may consider other information that the lender provided to the borrower); *Shroder v. Suburban Coastal Corp.,* 729 F.2d 1371, 1381 (11th Cir.1984) (stating that description of loan terms in TILA disclosure statement that conflicts with description of loan terms contained in note violates TILA). Courts therefore have applied the requirements of § 226.19 to loan documents beyond the actual Disclosure, such as note agreements. *See, e.g., Plascencia,* 2008 WL 1902698, at *4–6 (denying motion to dismiss § 226.19 claim predicated on alleged lack of clarity in note agreement with respect to disclosure of APR and possibility of negative amortization); *Pham v. T.J. Fin., Inc.,* No. CV 08–275 ABC, 2008 WL 3485589, at *2 (C.D.Cal. Aug. 11, 2008) (denying motion to dismiss with respect to claim for failure to disclose negative amortization because the "note suggests that negative amortization was a 'possibility' . . . but Plaintiff alleges that, under the note, negative amortization was

certain to occur"). This Court adopts that approach.

### a. Failure to disclose the actual interest rate

 Plaintiff claims that Defendant violated § 226.19(b) by failing to disclose the true rate of her loan. Section 226.19(b) requires lenders to disclose "any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carry-over." 12 C.F.R. § 226.19(b)(2)(vii). Section 1638(a)(4) requires lenders to disclose the cost of a loan to the borrower "as an 'annual percentage rate' using that term." 15 U.S.C. § 1638(a)(4). TILA defines the term "APR" as the "cost of your credit as a yearly rate." 12 C.F.R. § 226.18(e). Where, as here, a loan's initial interest rate subsequently is adjusted, the APR must "reflect a composite annual percentage rate based on the initial rate for as long as it is charged and, for the remainder of the term, the rate that would have been applied using the index or formula at the time of consummation." Commentary, 12 C.F.R. Pt. 226.(17)(C)–6. Section 1638(a)(8) requires lenders to provide a brief "descriptive explanation[ ]" of the APR. *See also* 12 C.F.R. § 226.18(e). The disclosure and explanation of the cost of the loan as an annual percentage rate must be clear and conspicuous. Commentary, 12 C.F.R. Pt. 226.17(a)(1)–1.

In the Statement that Plaintiff received in connection with her loan, Defendant represented that the APR was 7.136%, describing this figure as the "[t]he cost of your credit as a *yearly rate.*" (emphasis added). However, the Note itself states: "I will pay interest at a *yearly rate* of 1.500%." Note ¶ 2(A) (emphasis added). Plaintiff claims that this inconsistency renders the disclosure of the actual APR un-

clear and violates § 226.19. The court in *Plascencia* permitted a similar claim, stating that

> [p]laintiffs may be able to show that the disclosure in Section 4, which sets forth the rules for calculating the interest rate on Plaintiffs' mortgage, is obscured by Section 2 on the previous page, which states that the interest rate is one percent.... While the Statement also discloses an APR of 7.68% ..., Plaintiffs may be able to show that, considered as a whole, the disclosures provide confusing and seemingly contradictory information concerning the true interest rate of the loan.

*Plascencia,* 2008 WL 1902698, at *4; *see also Pham,* 2008 WL 3485589, at *4 (following *Plascencia* in holding that plaintiff had stated a claim based on failure clearly and conspicuously to disclose the APR). Defendants rely on *Smith v. Anderson,* 801 F.2d 661 (4th Cir.1986) for the proposition that "confusion" caused by alleged discrepancies between the APR and rates listed in a note does not give rise to a cognizable claim under TILA because "APR" is a term of art with a meaning distinct from that of the term "interest rate." *See id.* at 663–64. However, the court in *Andrews v. Chevy Chase Bank, FSB,* 240 F.R.D. 612, 618–19 (E.D.Wis. 2007), *reversed on other grounds,* 545 F.3d 570 (7th Cir.2008), distinguished *Smith* on facts nearly identical to those present here. In *Andrews,* the court noted that

> in its [Adjustable Rate Note], defendant stated that the 1.950 percent rate was a "yearly rate," the identical phrase that it used to define the APR. Thus, in addition to stating that the cost of the loan as a yearly rate was 4.047 percent, defendant suggested that the cost of the loan as a yearly rate was 1.950 percent. As previously indicated, however, the 1.950 percent rate was, in fact, a dis-

counted or teaser rate, which applied only to the first monthly payment.

*Id.* The court observed that where, as in *Smith*, "the interest rate and the APR are merely different ways of calculating the cost of a loan as a yearly rate, disclosure of the interest rate might not confuse an ordinary consumer." *Id.* n. 3 (citing *Smith,* 801 F.2d at 663–64). However, the court continued that this was not the case where "the 1.950 percent figure was a teaser rate and not the interest rate on the loan." *Id.* Similarly, this Court concludes that Plaintiff has stated a claim for failure clearly and conspicuously to disclose the true cost of the loan.

**b. Failure to disclose that the initial interest rate was discounted**

■ Plaintiff claims that Defendant violated § 226.19(b)(2)(v) by failing to disclose that the initial interest rate offered on Plaintiff's loan was a discounted rate. SAC ¶¶ 100–106. A "discounted" rate is one "that is not determined by the index or formula used to make later interest rate adjustments." 12 C.F.R. Pt. 226, Supp. I, ¶ 19(b)(2)(v)–1. "If the initial interest rate will be a discount or a premium rate, creditors must alert the consumer to this fact." *Id.* Such a disclosure must be "clear[ ] and conspicuous[ ]." 12 C.F.R. § 226.17(a)(1).

Defendant argues that Plaintiff ignores statements in the Disclosure, which purportedly complies with § 226.19. Defendant points out that the Commentary provides specific examples of statements that comply with the disclosure requirement, such as "Your initial interest rate is not based on the index used to make later adjustments .... Ask us for the amount our adjustable rate mortgages are currently discounted," and that Defendant's representation in the Disclosure is virtually identical. *See* Def.'s Mot. at 7:11–24. While this may be true, Plaintiff still may be able to show that Defendant's disclo-

sures, taken as a whole, obscured the nature of the discount. Section 2(A) of the Note states: "I will pay interest at a yearly rate of 1.500%. The interest rate I will pay *may* change." *Id.* (emphasis added). Section 2(B) then states that "[t]he interest rate I will pay *may* change on the 1st day of March 2006, and on that day every month thereafter." *Id.* (emphasis added). Finally, § 3(C) states that "[m]y monthly payment may change ... on the first day of March 2007 and on that day every 12th month thereafter." Based on these statements, the Court concludes that Plaintiff may be able to show that she was not informed in clear and conspicuous terms that the initial one-and-one-half percent interest rate disclosed in the Note was a discounted rate. Accordingly, Defendant's motion will be denied with respect to this claim.

**c. Failure to disclose that negative amortization was certain to occur**

■ Plaintiff alleges that Defendant violated § 226.19(b)(2)(vii) by failing to disclose that negative amortization was certain to occur if she made only the minimum payments shown in the Payment Schedule. As already noted, Section 226.19 requires that a lender disclose "[a]ny rules relating to changes in the index, interest rate, payment limitations, negative amortization, and interest rate carryover." 12 C.F.R. § 226.19(b)(2)(vii). In addition, with respect to variable-rate loans with payment caps, such as Plaintiff's loan, the Commentary states that "[i]f a consumer is given the option to cap monthly payments that may result in negative amortization, the creditor *must* fully disclose the rules relating to the option, including the effects of exercising the option (*such as negative amortization will occur and the principal loan balance will increase* )." 12 C.F.R. Pt. 226, Supp. I ¶ 19(b)(2)(vii)–2 (emphasis added).

With respect to negative amortization, the Note executed by Plaintiff states that "[i]f the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur." Note ¶ 3(C). The Note also states that "my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe." Note ¶ 3(D). The core of Plaintiff's argument is that the minimum payment *necessarily* was insufficient to pay the monthly interest on the loan, making negative amortization a certainty if Plaintiff made only the minimum payment.

A number of courts have recognized the viability of claims for failure clearly and conspicuously to disclose the certainty of negative amortization. *See, e.g., Mincey v. World Savings Bank, FSB,* 614 F.Supp.2d 610, 638 (D.S.C.2008) ("The problem with [defendant's] argument is that it [asserts] the TILA allows it to disclose something that is false: that negative amortization is merely a possibility when in fact it is a certainty. The court concludes that disclosing the possibility of negative amortization is misleading when the reality is that it will occur."); *Plascencia v. Lending 1st Mortgage,* No. C 07–4485 CW, 2008 WL 1902698, at *5–6 (N.D.Cal. Apr. 28, 2008) (noting same); *Mandrigues v. World Savs., Inc.,* No. C 07–04497 JF, 2008 WL 1701948, at *1–2 (N.D.Cal. Apr. 9, 2008) (same); *Pham,* 2008 WL 3485589, at *2 (same); *see also Monaco v. Bear Stearns Res. Mortgage,* 554 F.Supp.2d 1034, 1042 n. 11 (C.D.Cal.2008) (noting that the borrower was "warned that the Note 'may require'—as opposed to, more accurately, 'will require'—unpaid interest to be added

to loan principal," precluding dismissal of § 226.19(b) claim); *Avila v. Stearns Lending, Inc.,* No. CV 08–0419–AG, 2008 WL 1378231 (C.D.Cal. April 7, 2008) (granting preliminary injunction because Plaintiff was likely to succeed in showing, inter alia, that Defendants' "failure to disclose that the payment cap associated with the Option ARM loan sold to Plaintiffs would certainly cause negative amortization to occur" in violation of 12 C.F.R. § 226.19).

In *Plascencia,* for example, the court considered whether note provisions very similar to those at issue here failed adequately to disclose that negative amortization was certain to occur. The court concluded that "[w]hile the note does set out the rules by which negative amortization may occur, it refers to negative amortization only as a possibility . . . . Yet under any conceivable index value, it was clear at the time the disclosures were provided that Plaintiff's initial minimum monthly payment would not be sufficient to cover interest. Thus, negative amortization was a certainty if Plaintiffs followed the Payment Schedule listed in the Statement." *Plascencia,* 2008 WL 1902698, at *6.

In the instant case, Plaintiff's interest rate under the loan is calculated by adding the 3.4% margin to the Index rate. Thus, Plaintiff's rate will never be lower than 3.4% after the thirty-day interest rate adjustment. As in *Plascencia,* there was never a possibility that the payments listed on the Payment Schedule would cover all of the interest at the rate required to repay the loan. Accordingly, Plaintiff may be able to show that the certainty of negative amortization during the first year of the loan, based on the Payment Schedule, rendered Defendant's disclosures incomplete or misleading.[6]

---

**6.** Defendant relies on *Andrews v. Chevy Chase Bank, FSB,* 240 F.R.D. 612 (E.D.Wis.2007) to establish the adequacy of its disclosures, but as the *Mincey* Court explained, the minimum monthly payments in *Andrews* did not guarantee negative amortization. *See Mincey,* 614 F.Supp.2d at 635–37.

Defendant argues that irrespective of what the Note stated, the explanation of negative amortization provided in the Disclosure was accurate. The Disclosure contains the following language:

Beginning with the 13th payment and every 12 months thereafter, we will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal balance in full by the maturity date in substantially equal payments at the interest rate in effect during the month preceding the payment change date. This payment is called the "Full Payment." Except as otherwise provided, your "Limited Payment" will be the payment amount for the month preceding the payment change date increased by no more than 7.5% ("Payment Cap"). Your new "Minimum Payment" will be the lesser of the Limited Payment and the Full Payment. You also have the option to pay the Full Payment for your monthly payment. *If you pay less than the Full Payment, then the payment may not be enough to cover the interest due, and any difference will be added to your principal balance. This means the balance of your loan could increase. This is known as "negative amortization."* During the loan term, we may provide you with other monthly payment options that are greater than the Minimum Payment ("Payment Options"). Please ask us about these Payment Options.

Fontaine Decl., Ex. C, p. 1 (emphasis added). The Court agrees with Defendant that this statement, viewed independently, provides a technically accurate description of the effect of the minimum payment on the likelihood of negative amortization. However, the fact that Defendant may have provided a technically accurate disclosure does not excuse the potentially inadequate or misleading character of other disclosures it provided or lessen the resulting potential for confusion. Because all of

the information provided to Plaintiff must be considered in assessing whether the disclosures were clear, conspicuous, and complete, *see, e.g., Handy v. Anchor Mortgage Corp.,* 464 F.3d 760, 764 (7th Cir. 2006); *Roberts v. Fleet Bank (R.I.),* 342 F.3d 260, 267–68 (3d Cir.2003); *Shroder v. Suburban Coastal Corp.,* 729 F.2d 1371, 1381 (11th Cir.1984), Plaintiff may be able to show that the combination of disclosures was incomplete or misleading despite the technically accurate representation concerning negative amortization contained in the Disclosure.

**3. Violations of 12 C.F.R. §§ 226.17 & 226.18**

**a. Failure to disclose the interest rate underlying the Payment Schedule**

Plaintiff claims that the amounts listed in the Payment Schedule were based not on the disclosed composite APR listed on the Statement but on the 1.5% interest rate listed in the Note that applied for only thirty days. SAC ¶ 71. Defendant argues that the Payment Schedule complied with TILA because it "identifies the number, amount, and period of payments scheduled to repay the total loan payments." Def.'s Mot. at 14:1–2. However, § 226.17, which governs the form and content of disclosures including the Payment Schedule, states that "[t]he disclosures shall reflect the terms of the legal obligation between the parties," 12 C.F.R. § 226.17(c)(1), meaning "the credit terms to which the parties are legally bound as of the outset of the transaction," Commentary, 12 C.F.R. Pt. 226, Supp. I, ¶ 17(c)(1)–1. "The legal obligation normally is presumed to be contained in the note or contract that evidences the agreement." 12 C.F.R. Pt. 226, Supp. I, ¶ 17(c)(1)–2. More specifically, "[t]he Payment Schedule should reflect all components of the finance charge," *id.* ¶ 18(g)–1, and "in a variable rate transaction with ... a discounted or premium

rate, *disclosure should not be based solely on the initial terms," id.* ¶ 17(c)(1)–8 (emphasis added). Plaintiff adequately has alleged that the Statement, which contains a Payment Schedule basing several years of payments on the initial low interest rate, does not reflect clearly the legal obligation evidenced by the Note. Accordingly, the Court declines to dismiss this claim.[7]

### b. Failure to disclose the effect of the payment cap

■ Plaintiff alleges that Defendant failed clearly and conspicuously to disclose that the payment cap included in the Note "would cause hundreds, if not thousands[,] of dollars, each month, to be secretly added to principal." SAC ¶¶ 110–11. The Commentary to 12 C.F.R. § 226.17(c)(1) states that "[i]f a loan contains a rate or payment cap that would prevent the initial rate or payment, at the time of the first adjustment, from changing to the rate determined by the index or formula at consummation, the effect of that rate or payment cap should be reflected in the disclosures." 12 C.F.R. Pt. 226, Supp. I, ¶ 17(c)(1)–10(iii). ¶ 19(b)(2)(vii)–2. Defendant argues that the Payment Schedule in the Statement "reflects" the effect of the payment cap by providing payment amounts calculated based on (1) the payment cap and (2) the override of the payment cap when the unpaid principal balance reaches 115% of the original principal amount owed.

The Court agrees that Plaintiff has failed to state a claim on the basis of incomplete disclosure of the effect of the payment cap. As in *Pham,* the Statement

sets out the Payment Schedule, beginning with [the monthly payment] for the first year, and then four annual increases of the 7.5% payment cap. Once the principal reaches 115% of the original loan, the payment jumps to [$3,759.72]. The total finance charge ($[778,980]) and the total amount of payments ($[1,241,458.28]) are disclosed on the Statement, and, as the court in *Plascencia* held, this adequately discloses 'the effect of the payment cap on the true cost of the loan, in that [the Statement] accurately state[s] the cost of the loan based on the Payment Schedule listed.' To the extent Plaintiff bases this claim on her allegations that Defendant failed to disclose that negative amortization was certain to occur, it is duplicative and unnecessary.

*Pham v. T.J. Fin., Inc.,* No. CV 08–275 ABC, 2008 WL 3485589, at *3 (C.D.Cal. Aug. 11, 2008) (citing *Plascencia,* 2008 WL 1902698, at *8). For the same reasons, the Court will dismiss this claim.

### c. Failure to disclose the composite APR

■ Plaintiff claims that Defendant violated § 226.17(c) by failing to disclose the composite rate applicable to her loan in the Note. Plaintiff bases this claim on the Commentary to § 226.17(c)(1), which, as discussed previously, requires that the APR "reflect the terms of the legal obligation between the parties." The Commentary states that "in a variable-rate transaction with a . . . discounted or premium rate, disclosures should not be based solely on the initial terms. In those trans-

---

7. To the extent that Plaintiff alleges more generally that the Note failed to disclose her true legal obligations, that allegation appears to "rest on the identical facts Plaintiff has already alleged under more specific provisions of TILA, such as certain negative amortization and confusing and conflicting state-

ments on the interest rate. This claim is cumulative of Plaintiff's other claims, and it is DISMISSED." *Pham v. T.J. Fin., Inc.,* No. CV 08–275 ABC, 2008 WL 3485589, at *3 (C.D.Cal. Aug. 11, 2008) (citing *Plascencia,* 2008 WL 1902698, at *7).

actions, the disclosed annual percentage rate should be a composite rate based on the rate in effect during the initial period and the rate that is the basis of the variable-rate feature for the remainder of the term." 12 C.F.R. Pt. 226, Supp. I, ¶ 17(c)(1)(8) (emphasis added).

However, as the *Plascencia* court held in rejecting a claim identical to that asserted by Plaintiff in the instant case, the rule "simply requires that the APR, which appears only on the [Statement], be a composite rate rather than the ... initial interest rate." *Plascencia*, 2008 WL 1902698, at *7. As in *Plascencia*, the APR listed on Plaintiff's Statement is a composite rate—"a weighted average of the brief ... 'teaser' rate and the permanent, higher indexed rate—based on the value of the Index at the time the statement was produced." *Id.* Finally, "to the extent that Plaintiff[ ] assert[s] that the composite rate should have been disclosed in the Note in addition to the [Statement], [Plaintiff has] provided no provision imposing such a requirement. Further, such a claim is essentially identical to [the] claim ... that the Note failed to disclose the true interest rate." *Id.* n. 8. For these reasons, this claim will be dismissed.

## B. UCL Claims

■■■■■ California's Unfair Competition Law, Cal. Bus. & Profs. Code § 17200, prohibits any "unlawful, unfair or fraudulent business practices." *See also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180, 83 Cal. Rptr.2d 548, 973 P.2d 527 (1999). Because the statute is written in the disjunctive, it applies separately to business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. *See Pastoria v. Nationwide Ins.*, 112 Cal.App.4th 1490, 1496, 6 Cal. Rptr.3d 148 (2003). Plaintiff alleges violations of each prong of the UCL. Defendant argues that Plaintiff's UCL claims are preempted to the extent that they are based on TILA, and that the claims are barred independently because they would hold Defendant liable for conduct authorized by TILA.

With respect to Defendant's preemption argument, TILA's preemption provision states the following:

Except as provided in subsection (e) of this section, this part and parts B and C of this subchapter do not annul, alter, or affect the laws of any State *relating to the disclosure of information in connection with credit transactions, except to the extent that those laws are inconsistent with the provisions of this subchapter and then only to the extent of the inconsistency.*

15 U.S.C. § 1610(a)(1) (emphasis added). Citing *Nava v. VirtualBank*, No. 08–069, 2008 WL 2873406 (E.D.Cal. July 16, 2008), Defendant argues that Plaintiff is attempting impermissibly to "supplement" TILA using the UCL. The court in *Nava* did hold that UCL claims are preempted because Congress has "occupied the field" of lending disclosure regulation. *Id.* at *7. However, there is a split of authority in this regard. In *Plascencia*, for example, the court found that UCL claims premised on TILA violations are not necessarily preempted because "[t]he UCL does not, on its face, relate to the disclosure of information in connection with credit transactions, let alone impose disclosure requirements that are different than TILA's in any way." *Plascencia v. Lending 1st Mortgage*, 583 F.Supp.2d 1090, 1099 (N.D.Cal.2008) ("*Plascencia II* "). With respect to the UCL's four-year statute of limitations, which exceeds TILA's one-year limitations period, the court explained that

the fact that the UCL allows a claim to be brought within four years or may provide remedies not available under TILA .... simply provides an additional

level of protection for consumers. The UCL does not mandate disclosures that are substantively inconsistent with TILA's, and therefore does not bring the UCL within the scope of TILA's preemption provision.

*Id.* (citing *In re First Alliance Mortgage Co.*, 280 B.R. 246, 250–51 (C.D.Cal.2002), for the proposition that "[a]dditional penalties are not inconsistent with TILA, but merely provide greater protection to consumers"). This Court has applied reasoning similar to that in *Plascencia II* with respect to the preemption of UCL claims under the Home Owners Loan Act, 12 U.S.C. § 1461 *et seq., see Mandrigues v. World Savings, Inc.*, No. C 07–04497, 2008 WL 1701948, at *3 (N.D.Cal. April 9, 2008), and follows *Plascencia II* in holding that TILA does not necessarily preempt Plaintiff's UCL claims.

Defendant also claims that it cannot be held liable under the UCL for disclosures that comply with TILA. In *Rubio v. Capital One Bank*, 572 F.Supp.2d 1157 (C.D.Cal.2008), the court rejected a challenge to certain lending disclosures under TILA. Based on its conclusion that the disclosures were adequate, the court concluded that all UCL violations premised on those alleged violations were barred because conduct specifically authorized by law cannot be unlawful, unfair, or fraudulent. *Id.* at 1168–69. While the Court agrees with this proposition, it does not agree that all of Defendant's disclosures necessarily complied with TILA. Accordingly, the Court will dismiss Plaintiff's UCL claims only to the extent that they are predicated on conduct that the Court has found lawful under TILA.

## C. Fraudulent Concealment

 To state a claim for fraudulent concealment, a plaintiff must allege (1) concealment or suppression of a material fact; (2) a duty to disclose; (3) intentional concealment with the intent to defraud; (4) actual, justifiable reliance; and (5) resulting damages. *Blickman Turkus, LP v. MF Downtown Sunnyvale LLC*, 162 Cal. App.4th 858, 868, 76 Cal.Rptr.3d 325 (2008) (citing *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal.App.4th 603, 612–13, 7 Cal.Rptr.2d 859 (1992)). In the instant case, Plaintiff's fraud claim is premised on the same allegedly inadequate disclosures that form the basis of her TILA claims. Defendant argues that it cannot be held liable for fraudulent concealment because (1) it owed Plaintiff no duty to disclose, and (2) even if it owed such a duty, "[t]here can be no fraudulent omissions where the alleged material facts were not suppressed, but rather were actually disclosed in the loan documents plaintiffs received." *See* Def.'s Mot. at 22:1–23:4.

A duty to disclose may be imposed by statute. *See, e.g., Lovejoy v. AT & T Corp.*, 119 Cal.App.4th 151, 158, 14 Cal. Rptr.3d 117 (2004) (holding that disclosure provisions of California Public Utilities Code created a duty to disclose for fraudulent concealment purposes). The court in *Plascencia II* recently held that TILA imposes a duty of disclosure capable of supporting an action for fraudulent concealment. *Plascencia II*, 583 F.Supp.2d at 1100. With respect to Defendant's argument that the fraudulent concealment claim fails because all of the material loan terms were disclosed in some manner in the loan documents, it bears emphasis that "[c]oncealment is a term of art." *Lovejoy*, 119 Cal.App.4th at 158, 14 Cal.Rptr.3d 117. When a statute "defines the duty of disclosure, its requirements inform [the] analysis of whether there was concealment or suppression of a material fact." *Id.* at 159, 14 Cal.Rptr.3d 117. Thus, as with the disclosure provision at issue in *Lovejoy*, "[t]he issue is not … simply whether there was a disclosure. Rather, the issue is whether there was a disclosure consis-

tent with the duty to disclose." *Id.* As in *Lovejoy,* the gravamen of Plaintiff's allegations in the instant case is that Defendant failed to disclose relevant information in the *manner* required by TILA, rendering the disclosures that were made incomplete or deceptive. At least in the context of a motion to dismiss, Plaintiff's allegations are sufficient to state a claim for fraudulent concealment.

## D. Contract Claims

### 1. Breach of contract

■ Plaintiff asserts that Defendant breached the Note by (1) charging more than the 1.5% interest rate for the first three to five years of the loan, and (2) failing to apply any portion of Plaintiff's monthly payments towards her principal balance. Plaintiff has failed to state a claim on either ground for several obvious reasons. At the heading of the Note, there appears in all capital letters the admonition that "THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT." Paragraphs 1(C) and 1(D) explain that the interest rate is based on an Index. Those provisions also explain how the Index is calculated and the effect of the margin. While the Court has held that Defendant's disclosures with respect to the interest rate may have been less than clear and conspicuous as required by TILA, Plaintiff's claim that Defendant breached the Note by failing to apply a fixed interest rate is contradicted by the terms of the Note itself.

■ With respect to whether Defendant breached the Note by failing to apply Plaintiff's payments to her principal balance, the court in *Plascencia II* rejected an identical claim, stating that

[a]lthough the Court has held that Plaintiffs may be able to show that, considered as a whole, the disclosures provide confusing and seemingly contradictory information concerning the terms of the loan, the disclosures nonetheless accurately describe the relationship between the minimum monthly payment and the accrued interest.

*Plascencia II,* 583 F.Supp.2d at 1101. As in *Plascencia II,* the Note at issue here states that each monthly payment "will be applied to interest before Principal." Note ¶ 3(A). Elsewhere, the Note states that "[t]he 'Minimum Payment' is the minimum amount the Note Holder will accept for my monthly payment .... If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur." Note ¶ 3(C). The Note also provided Plaintiff will additional payment options in order to avoid negative amortization. *See* Note ¶ 3(H). As in *Plascencia II,* Plaintiff in the instant case does "not allege that she actually made payments that were greater than the amount of accrued interest, and that [Defendant] nonetheless failed to apply the payments to principal. If this were the case, [Plaintiff] would have stated a breach of contract claim. As the complaint stands now, [she] ha[s] not." *Plascencia II,* 583 F.Supp.2d at 1101.

In the instant case, because (1) "[t]he express terms of the Note ... directly contradict [P]laintiff's allegation that [D]efendant[ ] [was] obligated to apply a fixed interest rate ... for the first three to five years of the loan," *Quezada v. Loan Center of California, Inc.,* No. CIV. 08–177 WBS, 2008 WL 5100241, at *7 (E.D.Cal. Nov. 26, 2008), and (2) the Note "contains no promise, express or implied, that Plaintiff's payment would always be applied to both principal and interest," *Plascencia II,* 583 F.Supp.2d at 1101, Plaintiff's breach of contract claims will be dismissed. *See also Quezada,* 2008 WL 5100241, at *7–8 (reaching same conclusion with respect to identical claims for failure to apply fixed interest rate and to apply monthly payments to principal).

### 2. Tortious breach of the covenant of good faith and fair dealing

 "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Marsu, B.V. v. Walt Disney Co.,* 185 F.3d 932, 937 (9th Cir.1999) (*quoting Carma Developers, Inc. v. Marathon Dev. Cal., Inc.,* 2 Cal.4th 342, 371, 6 Cal.Rptr.2d 467, 826 P.2d 710 (1992)). That duty, known as the covenant of good faith and fair dealing, requires "that neither party . . . do anything which will injure the right of the other to receive the benefits of the agreement." *Andrews v. Mobile Aire Estates,* 125 Cal.App.4th 578, 589, 22 Cal. Rptr.3d 832 (2005) (citation omitted). However, the covenant "is available only in limited circumstances, generally involving a special relationship between the contracting parties, such as the relationship between an insured and its insurer." *Bionghi v. Metro. Water Dist.,* 70 Cal. App.4th 1358, 1370, 83 Cal.Rptr.2d 388 (1999). Courts have "reject[ed][the] argument that [the covenant] . . . should encompass normal commercial banking transactions." *Mitsui Mfrs. Bank v. Super. Ct.,* 212 Cal.App.3d 726, 729, 260 Cal. Rptr. 793 (1989). Moreover, "the implied covenant is a supplement to an existing contract, and thus it does not require parties to negotiate in good faith *prior* to any agreement." *McClain v. Octagon Plaza, LLC,* 159 Cal.App.4th 784, 799, 71 Cal. Rptr.3d 885 (2008) (emphasis added).

 Plaintiff's claim that Defendant breached the covenant is defective in several respects. Plaintiff has not alleged—and there appears to be no basis upon which Plaintiff could allege—that the type of special relationship required to invoke the covenant existed between herself and Defendant. Indeed, "[a] debt is not a trust and there is not a fiduciary relation between debtor and creditor as such." *Price v. Wells Fargo Bank,* 213 Cal.App.3d 465, 476, 261 Cal.Rptr. 735 (1989). In addition, "[t]o the extent that [P]laintiff's claim is based on [D]efendant['s] participation in the marketing, promotion, or distribution of her loan before consummation, the implied covenant of good faith and fair dealing is inapplicable." *Quezada,* 2008 WL 5100241, at *9 (citing *McClain,* 159 Cal.App.4th at 799, 71 Cal.Rptr.3d 885). The remaining allegations underlying Plaintiff's claim-concerning Defendant's alleged failure to apply a fixed interest rate and to apply monthly payments to the principal balance—are identical to those underlying her insufficient breach-of-contract claim. "Although adherence to the terms of a contract does not insulate a party against a claim of breach of the implied covenant of good faith and fair dealing, compliance with contractual terms cannot serve as the very basis for such a claim." *Quezada,* 2008 WL 5100241, at *9 (citing *Marsu, B.V. v. Walt Disney Co.,* 185 F.3d 932, 937 (9th Cir.1999) and *Racine & Laramie, Ltd. v. Dep't of Parks & Rec.,* 11 Cal.App.4th 1026, 1032, 14 Cal. Rptr.2d 335 (1992)). Accordingly, Plaintiff's claim for breach of the covenant of good faith and fair dealing will be dismissed.

### E. Motion to Strike

Plaintiff seeks to rescind her loan agreement with Defendant and ultimately to certify a class of similarly situated individuals with the goal of obtaining class-wide rescission. Defendant argues that rescission on a class-wide basis is unavailable as a matter of law, and that rescission of Plaintiff's loan may not be ordered as a remedy against Defendant because the loan has been sold to another financial institution. While the Court agrees with Defendant that rescission is unavailable on a class-wide basis, several factors preclude it from striking Plaintiff's request for re-

scission on an individual basis at this stage in the proceedings.

■ Courts are in uniform agreement that rescission may not be sought on a class-wide basis. *See Andrews v. Chevy Chase Bank*, 545 F.3d 570, 574 (7th Cir. 2008) (holding that "the rescission remedy prescribed by TILA is procedurally and substantively incompatible with the class-action device" and "may not be pursued on a class basis"); *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418 (1st Cir. 2007); *James v. Home Constr. Co. of Mobile, Inc.*, 621 F.2d 727 (5th Cir.1980) (same); *Gibbons v. Interbank Funding Group*, 208 F.R.D. 278, 284 (N.D.Cal.2002) (same). The remedy of rescission provided in 15 U.S.C. § 1635(b) is a personal remedy that involves individual questions of fact, making rescission inappropriate for class-wide adjudication. *See Gibbons*, 208 F.R.D. at 285; *see also James*, 621 F.2d at 730. "The highly individualized character of [the rescission] process and the range of variations that may occur render rescission largely incompatible with the sensible deployment of the class-action mechanism." *McKenna*, 475 F.3d at 424.

■ With respect to whether Plaintiff herself may seek rescission, Defendant correctly cites the Ninth Circuit's holding in *King v. California* that a borrower may not rescind a loan under TILA where the borrower has refinanced the loan, such that the underlying deed of trust has been "superseded." 784 F.2d 910, 913 (9th Cir. 1986). In the instant case, the complaint alleges that Plaintiff's loan has been sold to Washington Mutual, and that Washington Mutual purchased or otherwise is an assignee of the loan. SAC ¶ 4. The pleadings thus appear to establish that Defendant has no possession or control over the loan nor any security interest in the property securing the loan.

Nonetheless, the precise relationship between defendants Plaza Home Mortgage and Washington Mutual with respect to the loan remains unclear, and that lack of clarity prevents the Court from striking the request for rescission as to Defendant at this stage in the proceedings. Moreover, 15 U.S.C. § 1635(b) requires that upon rescission, "a creditor must return to a borrower any money or property given it by the borrower." *Avila v. Stearns Lending, Inc.*, No. 08–0419, 2008 WL 1378231, at *2 (C.D.Cal. Apr. 7, 2008). Thus, distinct from any statutory damages under TILA, rescission of Plaintiff's loan might require that Defendant return to Plaintiff any money it received from her. Accordingly, the Court declines to strike the request for rescission at this time.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss will be denied with respect to Plaintiff's claims pursuant to 12 C.F.R. § 226.19, her claim for failure to disclose the interest rate underlying the Payment Schedule pursuant to §§ 226.17 & 18, and her claims for fraudulent concealment and violations of the UCL, as limited by the Court's holdings under TILA.[8] Defendant's motion will be granted with respect to all other claims. Because the Court dismisses each of these claims as fundamentally inconsistent with the terms of the loan documents, dismissal is without leave to amend.[9] With respect to Defen-

8. As noted above, only those UCL claims predicated upon conduct that the Court has *not* found lawful under TILA will be allowed to proceed. As also noted above, limited aspects of these claims will be dismissed as duplicative of other, more specific alleged violations of TILA.

9. In assessing whether Plaintiff should be given leave to amend, the Court ordinarily must consider "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing par-

dant's motion to strike, it is clear that Plaintiff may not seek class-wide rescission as a matter of law, and the motion will be granted as to Plaintiff's request for such relief. However, because there is at least a possibility that Defendant would be a proper party to rescission of Plaintiff's individual loan, the motion to strike will be denied with respect to Plaintiff's request for rescission on an individual basis.

**IT IS SO ORDERED.**

ty[,] and futility of the proposed amendment." *Lee v. SmithKline Beecham, Inc.,* 245 F.3d 1048, 1052 (9th Cir.2001) (quoting *Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531, 538 (9th Cir.1989)); *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (providing factors constraining district court's discretion to deny leave to amend). These factors, however, are "not given equal weight ..., [and] futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon,* 59 F.3d 815, 845 (9th Cir.1995).